UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOKAT HAMED,<br><br>    Plaintiff,<br><br>v.<br><br>MACY'S WEST STORES, INC. and DOES 1-50,<br><br>    Defendant(s).<br>_____/ | Case No. CV 10-2790 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>**[Docket No. 184]** |

## I. INTRODUCTION

Shokat Hamed ("Plaintiff") claimed age, disability, and national origin discrimination as well as retaliation and violation of public policy as the causes of her termination from Macy's West Stores, Inc. ("Defendant"). Defendant filed a motion for summary judgment on March 4, 2011, to which Plaintiff responded on March 18, 2011. Docket Nos. 48, 57. The Court granted Defendant's motion for summary judgment as to two of Plaintiff's five original causes of action, which were: (1) discrimination claims based on Plaintiff's alleged disability and national origin,[1] and (2) a retaliation claim under the California Family Rights Act ("CFRA"). The remaining claims of age discrimination and a claim of violation of public policy based on age discrimination and failure to accommodate proceeded to trial.[2] Docket Nos. 73, 82. The Court granted Defendant's Motion for Judgment as a Matter of Law on the failure to accommodate claim at the close of arguments on July

---

[1] Plaintiff did not oppose Defendant's summary judgment motion with respect to the national original discrimination claim.

[2] Pursuant to the parties' agreement at the pretrial conference on July 7, 2011, the Court later dismissed the violation of public policy claim as duplicative of the age discrimination claim.

1 27, 2011. Docket No. 147. The jury returned a verdict in favor of Plaintiff on the age discrimination
2 claim; the total amount awarded to Plaintiff was $105,613, with no findings of conduct to support
3 punitive damages. *See* Final Special Verdict Form, Docket No. 163.

4     Plaintiff now brings a Motion for Attorneys' Fees and Expenses (the "Motion"). The Court
5 finds that the Motion is suitable for determination without oral argument, pursuant to Civ. L.R. 7-
6 1(b). Plaintiff's counsel seeks an award of $604,487.65 in attorneys' fees and costs under
7 California's Fair Employment and Housing Act ("FEHA"), as well as a multiplier of 2.0. The
8 baseline figure consists of $555,144.50 for hours spent on the *Hamed v. Macy's* case, $18,367.00 for
9 hours spent preparing the Motion,[3] and $30,976.15 in costs, $11,685.96[4] of which was filed with the
10 Court in Plaintiff's August 10, 2011 Bill of Costs. Motion, App. A; Docket No. 178. Defendant
11 does not dispute that Plaintiff is entitled to an award of reasonable attorneys' fees and costs, but
12 challenges the amounts sought by Plaintiff's counsel in the Opposition to Plaintiff's Motion for
13 Attorneys' Fees and Costs (the "Opposition"). Plaintiff's Reply brief (the "Reply") seeks
14 supplemental fees in the amount of $23,266.00 for work associated with preparation of the Reply
15 and with opposing Defendant's pending Motion for Judgment as a Matter of Law regarding the age
16 discrimination claim decided by the jury. For the reasons stated below, the Motion is GRANTED
17 IN PART and DENIED IN PART. Plaintiff is awarded $463,401.20 in fees and $29,574.40 in costs,
18 for a total of $492,975.60.

19 **II.    THE MOTION**

20     As the prevailing party in a discrimination case under FEHA, Plaintiff seeks to recover costs
21 and attorneys' fees under Cal. Gov't Code § 12965(b). Plaintiff also claims entitlement to a
22 multiplier of 2.0 based on the: (1) contingent risk to Plaintiff's firm, (2) the firm's preclusion from
23 performing other work, (3) the difficulty of the issues and the skill with which counsel presented
24 them, and (4) the results counsel obtained at trial. In support of these figures, Plaintiff has submitted

---

[3]The total lodestar figure, including compensation for hours spent writing the Motion, is $573,511.50. Motion at 4.

[4]After meeting and conferring with Defense counsel, Plaintiff reduced the photocopying costs sought in the Cost Bill to $1,437.75, which reduced the overall Cost Bill to $10,284.20. Motion at App. A.

2

the Declaration of Henry G. Wykowski in Support of Plaintiff Shokat Hamed's Motion for Attorneys' Fees and Costs, Docket No. 187, ("Wykowski Decl."), which includes Appendix A, a summary of hours and costs claimed to have been reasonably incurred in connection with *Hamed v. Macy's* and the Motion. The Wykowski Declaration also includes Exhibits A-C that respectively present: (A) a detailed accounting of time Andrew Scher, Christopher Wood, and Henry Wykowski spent on Ms. Hamed's case; (B) a copy of San Francisco Superior Court Judge Munter's Order Granting Approval of Attorneys' Fees and Costs in Mr. Wykowski's recent class action case; and (C) a detailed accounting of costs incurred to the Wykowski firm in association with Ms. Hamed's case. Plaintiff further supports his requested fees and costs with the Declaration of Jennifer Greengold Healey in Support of Plaintiff Shokat Hamed's Motion for Attorneys Fees and Costs, Docket No. 186, ("Greengold Decl.") and the Declaration of Geoffrey Hazard, Jr. in Support of Plaintiff Shokat Hamed's Motion for Attorneys Fees and Costs, Docket No. 185, ("Hazard Decl.").

The hourly rates Plaintiff's counsel has requested are: $565 for Plaintiff's lead attorney, Henry Wykowski; $465 for Plaintiff's co-counsel, Andrew Scher; and $190/hr. for counsel's law student clerk, Christopher Wood. Motion at 3. Plaintiff's lodestar amount, calculated by multiplying the hours each team member spent on the case by his respective hourly rate, is $573,511.50. *Id.* at 4. Plaintiff asserts that this amount is reasonable because both the time spent and the rates sought are reasonable. *Id.*

In its opposition brief, Defendant does not dispute that Plaintiff is entitled to reasonable attorney's fees and costs under Cal. Gov't Code § 12965(b). Opposition at 1. Defendant does, however, dispute the reasonableness of the hours for which Plaintiff has billed and the hourly rate for each of Plaintiff's litigation team members. *Id.* Specifically, Defendant argues that the number of hours for which Plaintiff's counsel can be compensated should be reduced because Plaintiff's time entries are: (1) vague, (2) block-billed, (3) excessive and duplicative, and (4) unreasonably includes hours spent on causes of action lost on summary judgment or on the Court's judgment as a matter of law. *Id.* at 2-8. Defendant also argues that all three hourly rates are unreasonably high and should be reduced because Plaintiff's only proffered evidence as to the reasonableness of his rates, the Hazard Declaration, does not satisfy Plaintiff's burden of proving that the rates requested are in

3

accordance with the prevailing rates in the community for attorneys of comparable skill and reputation. *Id.* at 9-11. Defendant argues that the lodestar calculation of fees should be $110,262.30 after adjusting the hours and the hourly rates for Mr. Wykowski, Mr. Scher, and Mr. Wood. *Id.* at 12. Defendant's supporting evidence includes Exhibits A-G, which respectively present: (A) a spreadsheet of Plaintiff's vague time entries, (B) a spreadsheet of Plaintiff's block-billed time entries, (c) trial transcript excerpts of Plaintiff's cross-examination of Joseph Dunnam, (D) trial transcript excerpts from proceedings on July 26, 2011, (E) trial transcript excerpts from proceedings on July 27, 2011, (F) excerpts of Ms. Hamed's deposition transcript from November 17, 2010, and (G) a copy of a *National Law Journal* article on attorney's fees and a survey of attorney billing rates.

Beyond the lodestar figure's compensation for actual time spent, Plaintiff requests a multiplier of 2.0 based on (1) the contingent risk of the case, (2) counsel's preclusion from taking on other work, (3) the difficulty of the issues and the skill Plaintiff's counsel displayed in presenting them, and (4) the results obtained in the action. Motion at 4-11. Plaintiff supports these requests with Professor Geoffrey Hazard's opinion that because Plaintiff's counsel accepted responsibility for advancing costs and bore the potential risk of losing, a multiplier is justified as an incentive for experienced attorneys to take on civil rights and discrimination cases for lower wage workers. *See* Hazard Decl., ¶ 12. Plaintiff's former legal assistant, Ms. Greengold Healey, attested to the difficulty of securing representation for employment and discrimination cases based on her work as the Supervising Attorney for a new Legal Help Center at San Francisco's District Court. *See* Greengold Decl., ¶¶ 4-5. Mr. Wykowski claims to be an experienced trial attorney, partially in employment and discrimination law, because he has tried over 45 cases spanning an array of subject matters. *See* Wykowski Decl., ¶ 3. Plaintiff also submits Professor Hazard's opinion that under an "all things considered" evaluation of the risk Plaintiff's counsel assumed, a multiplier of at least 2.0 is justified. Hazard Decl., ¶¶ 13-14.

Defendant argues that Plaintiff's counsel should not be awarded a multiplier because (1) no contingent risk existed, (2) Plaintiff's counsel was not significantly precluded from taking other work, (3) the legal issues and facts of the case lacked complexity, (4) the results obtained were not exceptional, and (5) the cases to which Plaintiff's counsel points as examples of attorneys who were

4

rewarded with a multiplier for performing similar work are not analogous to the instant case. Opposition at 12-21. Defendant argues that the Court should exercise its discretion under Cal. Gov't Code § 12965(b) to not only reduce the lodestar amount but to refrain entirely from applying a multiplier. *Id.* at 12, 21.

With respect to the costs incurred by Plaintiff's counsel, Plaintiff has provided the Court with a statement of $20,727.95 worth of costs (including Professor Hazard's $5,000 expert witness services fee), in addition to the previously filed Bill of Costs, which Plaintiff has since reduced to $10,284.20.[5] *See* Wykowski Decl., Ex. C; *see also* Docket No. 178. Defendant argues that Plaintiff is not entitled to the full amount of costs. Opposition at 21-22. Defendant specifies that (1) the $12,744 witness fee paid to Richard Carlson should be denied in part because the jury largely rejected his proffered opinion, (2) the $5,000 witness fee paid to Professor Geoffrey Hazard should be denied in its entirety because his testimony did not satisfy Plaintiff's evidentiary burden with respect to the reasonableness of the rates sought, and (3) the $1,437.75 photocopy bill should be denied in its entirety because it is not statutorily permitted. *Id.*

Finally, Plaintiff seeks an extra $23,266.00 for work associated with preparation of the Reply and with opposing Defendant's pending Motion for Judgment as a Matter of Law regarding the age discrimination claim decided by the jury. Plaintiff supports his claims for post-Motion fees with the Reply Declaration of Henry G. Wykowski in Support of Plaintiff Shokat Hamed's Motion for Attorneys' Fees and Costs, Docket No. 199, ("Wykowski Decl. 2").

## III. LEGAL STANDARD

Under the California Fair Employment and Housing Act ("FEHA"), "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." Cal. Gov't Code § 12965(b). Generally, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*." *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005) (quotation omitted) (emphasis in original). The California Supreme Court has held that in order to accomplish the legislative purpose

---

[5]The original amount of $11,685.96 was reduced to $10,284.20 after Plaintiff's attorneys negotiated a lower cost for photocopying services. Motion, App. A.

5

of "assuring the availability of counsel to bring meritorious actions under FEHA, the goal of an award of attorney's fees is to fix a fee at the fair market value for a particular action." *Id.* at 394 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (quotations omitted)). Fixing the fee at the relevant fair market value may sometimes require the court to adjust the fees below the requested amount; thus the statutory qualification that a court "in its discretion" may make an award to the prevailing party means something similar to "in a manner that, in the judgment of the court, will best effectuate the purposes of FEHA." *Horsford,* 132 Cal. App. 4th at 394.  In short, so long as Californians' right to "seek, obtain, and hold employment without experiencing discrimination" is upheld, the Court's discretion shall be respected. *Flannery v. Prentice*, 26 Cal. 4th 572, 582–83 (2001).

Both federal and California courts have adopted the "lodestar" method for calculating reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010).  The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Greene v. Dillingham Constr. N.A.*, 101 Cal. App. 4th 418, 422 (2002).  To determine whether Plaintiff's claimed hours are reasonable, the Court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley*, 461 U.S. at 434. The Court must assess whether the hours claimed are vague, block-billed, excessive and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *See Navarro v. General Nutrition Corp.*, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005). To assist the Court with this exercise of its discretion, "'[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)). Fee applicants generally provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (holding that affidavits of four practitioners in the

1 community were sufficient to establish reasonable rate of $250.00 per hour even though attorney had
2 only billed $150.00 per hour). Decisions by other courts regarding the reasonableness of the rate
3 sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140
4 F.3d 1207, 1210 (9th Cir. 1998) (holding that rate set by district court based, in part, on the rate
5 awarded to same attorney in another case, was reasonable).

6 In calculating the lodestar amount, the Court considers any relevant factors listed in *Kerr v.
7 Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).[6] To the
8 extent that the *Kerr* factors are not addressed in the calculation of the lodestar, they may be
9 considered in determining whether the fee award should be adjusted upward or downward with a
10 multiplier, once the lodestar has been calculated. *Chalmers v. City of Los Angeles*, 796 F.2d 1205,
11 1212 (1986). However, there is a strong presumption that the lodestar figure represents a reasonable
12 fee. *Jordan*, 815 F.2d at 1262.

## IV. ANALYSIS

### A. Reasonableness of Number of Hours Billed in *Hamed v. Macy's*

15 Plaintiff argues that, as stated in *Weeks v. Baker & McKenzie*, the FEHA statute "created a
16 reasonable expectation that attorney fees would not be limited by the extent of [Plaintiff's] recovery
17 and that [Plaintiff's] attorneys would receive full compensation for their efforts." 63 Cal. App. 4th
18 1128, 1175 (1998). Plaintiff's counsel further contend that they met their burden of submitting
19 evidence to support the reasonableness of the number of hours worked by submitting the "unusually
20 detailed" accounting for time in Exhibit A of the Wykowski Declaration. Hazard Decl., ¶ 9; *see
21 Navarro*, 2005 U.S. Dist. LEXIS 39726, at *19 (explaining that it is Plaintiff's burden to prove that

---

[6] In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. 526 F.2d at 70.

the number of hours are reasonable).  Defendant argues that for a variety of reasons, including those analyzed below, many of the hours for which Plaintiff's counsel requests compensation are unreasonable and thus must be eliminated from the lodestar calculation.  Opposition at 2-8.  Defendant further argues that the Court should make a percentage reduction of the number of hours to account for time spent on unsuccessful causes of action, as did the *Navarro* court.  *Navarro*, 2005 U.S. Dist. LEXIS 39726,  at *49.

### 1. Allegedly vague time entries

Defendant contends that over 120 time entries in Exhibit A are "vague and incomplete and therefore incapable of a determination as to whether these hours are reasonable."  Opposition at 3.  These 120 time entries, which include time spent by Mr. Wykowski, Mr. Scher, and Mr. Wood, total 133.2 hours of work on Plaintiff's case.  *Id.*  Defendant argues that 70 of the entries are vague solely on the ground that the specific subject of legal research or the specific subject of telephone calls has been redacted.  *Id.*  Defendant objects to the remaining hours on the grounds that the description is too general to enable the Court to determine whether the referenced work was duplicative of other work.  *Id.*  Because of these redactions and general descriptions, Defendant claims, Plaintiff's counsel have failed to document their hours in a manner that can be billed to clients as required by *Hensley* and *Navarro*.  *See Hensley,* 461 U.S. at 434 (requiring that the billing be in a form that can be submitted directly to clients); *see also Navarro*, 2005 U.S. Dist. LEXIS 39726, at *43-44 (reducing hours for impermissibly vague accounting).  The Court is not persuaded by this argument.

In *Navarro*, the vagueness of the attorney's descriptions forced the court to guess that some of her hours were for her untimely cross-motion, which was ultimately stricken by the court.  *Navarro*, 2005 U.S. Dist. LEXIS 39726, at *43-44.  The Court finds no such similar evidence of bad faith accounting for time in the instant case.  Furthermore, Plaintiff cites *Democratic Party of Washington v. Reed* in support of the right to redact, arguing that redactions are permissible to protect sensitive information relevant to strategy in an ongoing case. 388 F.3d 1281, 1286 (9th Cir. 2004) (award of attorney's fees under 42 U.S.C.A. § 1988).  Ms. Hamed's case was also ongoing as Defendant filed a renewed Motion for Judgment as a Matter of Law.  The Court holds that none of Plaintiff's counsels' hours shall be eliminated from the lodestar calculation for vagueness because

8

counsel have met their burden under *Hensley* to identify the general subject matter of the time expenditures. 461 U.S. at 434.

### 2. Block-billed hours

Defendant argues that block billed time entries, *i.e.*, time entries that list multiple activities without indicating how much time was spent on each activity, fail to meet Plaintiff's burden to prove the reasonableness of her attorney's fees. Opposition at 4. The Court notes Plaintiff's explanation that some of the hours, particularly those relating to the Goodin and Moore depositions, were block billed because the attorneys were simultaneously working on two related endeavors in an effort to be more efficient. Reply at 2. After a thorough review of Defendant's Exhibit B, the Court finds that many entries do indeed refer to multiple activities. The Court reduces these hours by only 10 percent given the reasonable explanation offered for only some of the block-billing. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (2007) (reducing block billed time by 20 percent, which it found to be a "middle ground" established in the California State Bar's Arbitration Advisory 03-01 (2003)).

### 3. Excessive and Duplicative Fees

Trial courts have a responsibility to carefully review attorneys' documentation of time expended in order to eliminate unreasonable "'padding' in the form of inefficient or duplicative efforts." *Ketchum*, 24 Cal. 4th at 1132. "While the Court must carefully review the accounting for inefficient or duplicative billing . . . 'the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.'" *Kempf v. Barrett Business Services, Inc.*, 2007 WL 4167016, at *5 (N.D. Cal. Nov. 20, 2007) (quoting *Horsford*, 132 Cal. App. 4th at 396).

Defendant argues that Plaintiff's counsel spent excessive and duplicative time preparing for the closing statement at trial and the cross examination of Joseph Dunnam. Opposition at 5. However, Defendant provides no argument for why these hours are excessive; Defendant simply concludes that 37 hours of preparation for a closing statement must be excessive, as must be 17 hours of preparation for a cross examination. *Id.* The Court agrees with respect to the hours spent on the closing statement. The Court thus reduces the hours of preparation for the closing statement

by half. The 17 hours of preparation for the cross examination, however, shall be compensable and the Court will "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).

While the Court recognizes that Mr. Wood likely played a key role in helping Mr. Wykowski and Mr. Scher before and after the trial, Mr. Wood's hours spent attending trial without actively participating in it are not compensable. The Court finds that this reduction still effectuates the purpose of the FEHA statute without unreasonably burdening Plaintiff's counsel who, as Defendant correctly contends, are the sole beneficiaries of Mr. Wood's learning experience at trial. Opposition at 7.

### 4. The Proposed Overall Reduction of Hours for Plaintiff's Limited Success

California law permits the district court to reduce the lodestar amount based on the results obtained but does not require it to do so. *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 610 (9th Cir. 2000). In *Hensley*, the Supreme Court explained that where a plaintiff presents in one lawsuit "distinctly different claims for relief that are based on different facts and legal theories," a reduction in the lodestar may be appropriate if the plaintiff prevailed on only some of the claims. 461 U.S. at 434-35. The reason for such a reduction is that time spent on the unrelated claim cannot be considered to have been expended upon the ultimate result achieved. *Id*. The Court noted, however, that such cases involving unrelated claims were not likely to arise with great frequency. *Id*. Most civil rights cases, the Court explained, would involve only a single claim or a set of claims with a common core of facts or based on related legal theories and these lawsuits "cannot be viewed as a series of discrete claims." *Id*. In that case, the court should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*.

Defendant asserts that district courts applying California law have implemented a percentage reduction to the reasonable fee award when Plaintiff prevailed on only one cause of action. *See, e.g., Beecham v. City of West Sacramento*, 2009 U.S. Dist. LEXIS 111572, at *14-16 (E.D. Cal. Nov. 16, 2009) (court reduced total fee award by 50% because of limited success at trial); *Anderson v. Am. Airlines, Inc.*, 2008 U.S. Dist. LEXIS 111065, at *25 (N.D. Cal. Nov. 5, 2008) (court reduced time spent on dismissed claims by 50%). Defendant argues that because only one out of Plaintiff's five

1 causes of action was actually decided by the jury at trial, much of Plaintiff's counsel's work cannot
2 reasonably be compensated. Opposition at 8. The Court agrees in part.

3 In this case, three of Plaintiff's five claims were dismissed on summary judgment, and one
4 was dismissed after trial on Defendant's Motion for Judgment as a Matter of Law. Despite
5 Plaintiff's argument that the jury verdict was substantially greater than any of the settlement offers,
6 the standard for judging the success of the litigation is the relationship between the overall relief
7 obtained and the hours expended. *See* Wykowski Decl. 2, ¶ 3; *see also Hensley*, 461 U.S. at 434-
8 35. Indeed, in judging the Plaintiff's level of success and the reasonableness of hours spent
9 achieving that success, the Court should "give primary consideration to the amount of damages
10 awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation
11 omitted). As Defendant persuasively argues, Plaintiff's jury verdict of $105,000, with no finding of
12 conduct to support punitive damages, falls far short of counsel's requested amounts of over
13 $160,000 in back and front pay, at least $250,000 in other compensatory damages, and punitive
14 damages. Opposition at 1. However, the Court recognizes the fact that attorneys must pursue all
15 available theories in pursuit of clients' objectives since it is impossible to know in advance which
16 theories will prevail, *Greene*, 101 Cal. App. 4th at 424, and notes Plaintiff's counsel's claim that
17 they have the right to recover for all hours reasonably spent in pursuit of the litigation, including
18 hours reasonably spent on legal theories or arguments that ultimately were unsuccessful, *Sundance
19 v. Municipal Court*, 192 Cal. App. 3d 268, 273-74 (1987). As a result, the relative economic victory
20 is not the only standard by which a court must measure the reasonableness of an overall fee
21 reduction.

22 The other standard the Court must use to decide the amount of reduction of the overall award
23 is the degree to which the unsuccessful claims are related to the successful one. *Hensley*, 461 U.S. at
24 434-35. Plaintiff's one successful claim – age discrimination – arose out of the same overall course
25 of conduct pertaining to her failed claims of: national origin discrimination, disability
26 discrimination, violation of public policy based on national origin and disability, failure to
27 accommodate, and retaliation for requesting accommodation. However, several of these claims
28 involved substantially different legal theories. *See* Second Amended Order Granting in Part and

1 Denying in Part Summary Judgment, Docket No. 84, ("Summary Judgment Order") at 15-17.
2 Although the court in *Beecham* reduced the number of plaintiff's recoverable hours by 60 percent
3 because he prevailed on only one of five causes of action, the Court declines to adopt this figure
4 because it was partially predicated on attorney's sanctioned actions. 2009 U.S. Dist. LEXIS 111572,
5 at *12. In the absence of sanctionable actions, and based upon the circumstances of this case, the
6 Court instead reduces the hours by ten percent. In the Court's view, this reduction represents a
7 reasonable estimation of the work done on the dismissed claims that would not have otherwise
8 occurred, and accounts for the limited lack of success.

|  | **Hours Requested** | **Block Billed Hours** | **Reduction of excessive hours** | **Remaining Hours x percentage reduction** | **Total** |
|---|---|---|---|---|---|
| Wykowski | **547.9** | **72.5(0.1) = 7.2** | **7.5** | **533.2 x 0.9** | **479.88** |
| Scher | **409.8** | **20.0(0.1) = 2.0** | **7.25** | **400.55x 0.9** | **360.50** |
| Wood | **289.6** | **2.0(0.1) = 0.2** | **52.0 +4.1 = 56.1** | **233.3 x 0.9** | **209.97** |
| TOTAL | **1247.3** | **9.4** | **70.85** | **1167.05 x 0.9** | **1050.35** |

17         **B.**     **Reasonableness of Number of Hours Billed for Work on The Fee Motion**
18     Plaintiff's counsel are entitled to recover for all hours expended on the attorneys' fee motion.
19 *Serrano*, 32 Cal. 3d at 624. As previously discussed, the Court does not find any of the billing
20 entries (including those related to the fee motion) to be vague. Defendant does not argue that any of
21 the hours spent on the fee motion are block-billed, and the Court agrees. The Court also does not
22 find the number of hours requested to be excessive. *See Vallejo v. Astrue*, 2011 WL 4383636, at *4
23 (E.D. Cal. Sept. 20, 2011) (citing *Spegon v. Catholic Bishop*, 175 F.3d 544, 553–54 (7th Cir. 1999)
24 (noting that the number of hours expended on a fee request should "bear a rational relation to the
25 number of hours spent litigating the merits of the case")). The Court finds Mr. Wykowski
26 reasonably spent 12.3 hours, Mr. Scher reasonably spent 20.1 hours, and Mr. Wood reasonably spent
27 10.7 hours in connection with the present fee motion.

### C. Reasonableness of Hourly Rates

Plaintiff's counsel are entitled to compensation at the prevailing market rate for attorneys of similar skill and experience. *Serrano v. Unruh*, 32 Cal. 3d. 621, 643 (1982). Plaintiff was represented by Henry Wykowski, requesting an hourly rate of $565, Andrew Scher, requesting an hourly rate of $465, and law clerk Christopher Wood, requesting an hourly rate of $190. Motion at 3. The Wykowski Declaration sets forth detailed information about each member of the team's educational and professional background, work experience, and skill to support his argument that these figures are reasonable. Wykowski Decl., ¶¶ 2-4 (Mr. Wykowski), ¶¶ 5-6 (Mr. Scher), ¶ 7 (Mr. Wood). In addition, Professor Geoffrey Hazard has submitted a declaration in which he attests that Plaintiff's counsel's rates are within the range of reasonable rates for comparably experienced attorneys. Hazard Decl., ¶¶ 3, 6-7.

Defendant argues that Professor Hazard's opinion is so conclusory as to render it baseless and that he is unqualified to give such an opinion because he is not a practicing attorney. Opposition at 9. While, generally, parties seeking fees provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought, *see, e.g., Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (holding that affidavits of four practitioners in the community were sufficient to establish reasonable rate of $250.00 per hour even though attorney had only billed $150.00 per hour), Professor Hazard's expertise and experience entitle him to opine on this subject. Hazard Decl., ¶ 1 (stating that he has often been recognized as an expert concerning the reasonableness of fees in civil litigation); *see*, *e.g.*, *New York County Lawyers' Ass'n v. State*, 763 N.Y.S.2d 397,416 (N.Y. Sup., Feb. 3, 2003) (considering The Judicial Conference of the United States' recommended rate of $113 per hour for counsel appointed in federal criminal cases and drawing on Professor Norman Lefstein's testimony that the hourly rate should be at least $100 an hour); *Halderman v. Pennhurst State Sch. and Hosp.*, 533 F.Supp. 649, 655-56 (D.C. Pa., Jan. 26, 1982) (considering a professor's recommendation that fee awards include adequate compensation for paralegal time when deciding whether to award fees for a third year law student's work).

Mr. Wykowski's other evidence in support of the reasonableness of his and Mr. Scher's hourly rates is Superior Court Judge Munter's decision from earlier this year. *See* Wykowski Decl., Ex. B. Plaintiff argues that the hourly rate established therein creates a presumption that the requested hourly rates are reasonable. Reply at 7. The Court notes that decisions by other courts regarding the reasonableness of the counsel's rate are only one part of the evidence to support a finding of reasonableness. *See Widrig*, 140 F.3d at 1210 (holding that the district court based its rate determination for an attorney, in part, on the rate awarded to same attorney in another case). The Court has a duty to consider several factors, including the experience, skill and reputation of the applicant, and must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Navarro*, 2005 U.S. Dist. LEXIS 39726, at *19 (citing *Chalmers*, 796 F.2d at 1210-11).

The cases cited by Plaintiff are not analogous. *See Armstrong v. Brown*, 2011 WL 3443922, at *2 (N.D. Cal. Aug. 8, 2011) (the underlying litigation involved securing compliance with ADA standards); *see also Pande v. Chevrontexaco Corp.*, 2008 WL 906507, at *4 (N.D. Cal. Apr. 1, 2008) (a complex class action suit brought under the California Business and Practices Code in which the jury awarded the Plaintiff over $800,000). The Court similarly finds Defendant's evidence – the *National Law Review*'s survey showing the average rates for partners and associates of the San Francisco employment and discrimination firm Littler Mendelson – of only limited applicability. *See* Kumagai Decl,. Ex. G. In deciding reasonable hourly rates for Plaintiff's counsel, the Court principally draws upon the rates recently awarded to plaintiff's side employment attorneys in the Northern District of California.

**(I)     Henry Wykowski**

Henry Wykowski graduated from Tulane University in 1974 and immediately began a career in civil rights litigation. Wykowski Decl., ¶ 2. After moving to California and gaining admission to the California Bar, Mr. Wykowski changed areas of practice, working first for the U.S. Attorney and then for a firm at which he represented companies in various aspects of business, commercial, and employment litigation. *Id.* Mr. Wykowski himself describes his practice areas as "broad-ranging," but does support his claim to extensive experience in employment and discrimination

14

litigation with a list of ten representative cases, some of which were settled before trial. *Id.* at ¶ 3. The Court takes into consideration the fact that Mr. Wykowski's practice is not primarily in the area of employment law, in fact he advertises himself as one of San Francisco's "most successful and notable criminal tax attorneys,"[7] but tempers this finding against Mr. Wykowski's considerable trial experience brought to bear on the instant case. The Court awards Mr. Wykowski his requested hourly rate of $565 because of his extensive trial experience, his excellent reputation in the legal community, the quality of his representation of Plaintiff, and Professor Hazard's attestation to the reasonableness of his rates. *See* Hazard Decl., ¶ 3; *see also Pande*, 2008 WL 906507, at *4 (awarding $575/hr. for a 1983 Hastings graduate who had specialized in complex business litigation since 1989).

### (ii)   Andrew Scher

Mr. Wykowski has attested that after Mr. Scher graduated from Boalt Hall (U.C. Berkeley School of Law), he was admitted to the California Bar in 1989 and began working with a large, national law firm noted for its expertise in litigation. *See* Hazard Decl., ¶ 5 (stating that Mr. Scher began his career at Lewis, Bribois, Bisgaard & Smith in Los Angeles).[8] According to Mr. Wykowski, Mr. Scher has worked collaboratively with him on many of his cases over the past 15 years and assisted him with most of the ten employment and discrimination cases listed in the Wykowski Declaration. Wykowski Decl., ¶ 6. Mr Wykowski also attests that Mr. Scher has worked with other small firms in the Bay Area at which his focus has been on research and brief writing, and that his most recent work has been focused on employment discrimination litigation, which he considers to be his specialty. Wykowski Decl., ¶ 6; Wykowski Decl. 2, ¶ 5. The Court accordingly awards Mr. Scher an hourly rate of $350, which it has determined, based on a review of the evidence and of case law, to be the prevailing market rate for an attorney of comparable experience. *See Miller v. Vicorp Restaurants, Inc.*, 2006 WL 212021, at *2 (N.D. Cal. Jan. 11, 2006) (in which the court noted that it had seen other competent counsel claim hourly rates of around $350 per hour for

---

[7] http://wykowskilaw.com/about_us/

[8] http://www.lbbslaw.com/about.aspx ("Lewis Brisbois offers a highly diversified practice, while remaining exceptionally strong in the litigation arena.")

cases similar to this one-plaintiff FEHA action in which the jury award was $350,000). The court in *Miller* increased that rate for an attorney with notable trial experience, which Mr. Scher lacks.

### (iii) Christopher Wood

Mr. Wood is currently a third year student at U.C. Hastings where he has achieved much academic success. Wykowski Decl., ¶ 7. At the time he worked on Ms. Hamed's case, he was a summer clerk for Plaintiff's firm, and was able to draw upon his several years of work experience with Mr. Wykowski in making his contributions to the instant case. The Court notes two recent California district court decisions in which the courts awarded $75/hr. to law clerks. *See McCarthy v. Reynolds*, 2011 WL 4344147, at *1 (E.D. Cal. Sept. 14, 2011); *see also Faigman v. AT & T Mobility LLC*, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011). The Court also notes, however, that Defendant has suggested a rate of $125/hr. for Mr. Wood. Opposition at 11. Given Defendant's acquiescence to a relatively high rate for Mr. Wood, the Court exercises its discretion to award the standard rate for paralegal support in the Bay Area, which it has previously determined to be $120/hr. *See Pande*, 2008 WL 906507, at *6 (explaining that the Court's review of the case law indicates that the standard rate for paralegal support in the Bay Area is around $120.00/hour); *see also Petroleum Sales, Inc. v. Valero Refining Co.*, 2007 WL 2694207 (N.D. Cal. Sept. 11, 2007).

|                  | Number of hours         | Hourly Rate | Total Lodestar Amount |
|------------------|-------------------------|-------------|------------------------|
| Henry Wykowski   | 479.88 + 12.3 = 492.18  | $565        | $278,081.7             |
| Andrew Scher     | 378.59 + 20.1 = 398.69  | $350        | $139,541.5             |
| Christopher Wood | **219.6 + 10.7 = 230.3** | $120        | $27,636.0              |
| Total            |                         |             | $445,259.2             |

### D.    Enhancement of Lodestar Calculation for Work on *Hamed v. Macy's*

The California Supreme Court has held that contingency cases, as a class, are entitled to special fee consideration; the baseline lodestar calculation represents reasonable compensation only for conducting noncontingent litigation of the same type. *Ketchum*, 24 Cal. 4th at 1132 (stating that a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more [beyond standard hourly compensation], competent counsel will be reluctant to accept fee

1    award cases.") The Court recognizes that under *Ketchum* it retains independent discretion to award
2    a fee enhancement to effectuate the purposes of the FEHA statute. 24 Cal. 4th at 1136-38 (asserting
3    that California courts' discretion to award fee enhancements is not bound by federal cases
4    establishing a presumption of the sufficiency of the lodestar figure, and that a court is not required to
5    include a fee enhancement for *contingent risk*, exceptional skill, or other factors, although it retains
6    discretion to do so in the appropriate cases) (emphasis added).

7    In this case, Plaintiff's counsel argue that the lodestar amount is inadequate to compensate
8    for not only the contingent risk of the case, but also counsel's preclusion from performing other
9    work, the skill with which counsel presented difficult issues in the case, and the results counsel
10   obtained at trial. Motion at 4-11. The Court recognizes that these concerns are all *Kerr* factors,
11   which courts have used to assess the merits of a multiplier in the event that the factors were not
12   adequately considered in lodestar calculations. *Chalmers*, 796 F.2d at 1212.

13   The Court finds that in this case, all the factors Plaintiff alleges in support of a multiplier are
14   compensated in the baseline lodestar calculation. Ordinary preclusion from performing other work
15   while engrossed in a pending action is a part of every case, and a party's counsel are not entitled to a
16   multiplier merely because they were busy during trial. Additionally, except in exceptional
17   circumstances not present here, the skill of the attorneys is a factor necessarily reflected in the
18   hourly rate component of the lodestar figure; the more skillful and experienced the attorney, the
19   higher his hourly charge. *Weeks*, 63 Cal. App. 4th at 1175. The Court also finds that the results
20   obtained at trial, as previously discussed, were appreciable but not extraordinary. Plaintiff's
21   attorneys did not litigate an entirely novel claim or effectuate a great change in the law such as
22   expanding the coverage of FEHA. *See Cosby*, 2010 U.S. Dist. LEXIS 137735, at *17-18 (explaining
23   that "because there is no novelty in the case," attorneys are not entitled to an enhancement).
24   Accordingly, the Court declines to apply a multiplier on account of the results obtained.

25   Finally, the Court declines to exercise its discretion to apply a multiplier because of the
26   contingent nature of the case. The Court recognizes that Plaintiff's advanced age increased the risk
27   involved in this case. *See, e.g., Pooshs v. Fluoroware, Inc.*, 1994 WL 374540, at *2 (N.D. Cal. Jul.
28   11, 1994) (applying a multiplier of 2 based on the exceptional skill of the attorneys and the
contingent risk, and also noting that age discrimination cases are among the most difficult

discrimination cases for a Plaintiff's attorney.). However, the evidence presented at trial belies the conclusion that Plaintiff's advanced age presented a risk of no recovery. The Court thus declines to award a multiplier. The total attorneys' fees for work associated with the *Hamed v. Macy's* litigation and the Motion is $445,259.20.

### E. Attorneys' Fees for Work Performed Since the Filing of the Fee Motion

Mr. Wykowski attests to having spent 4.0 hours on the Reply and 1.2 hours opposing Defendant's Renewed Motion for Judgment as a Matter of Law. Wykowski Decl. 2, ¶ 8. He is thus entitled to an additional $2,938. Mr. Scher has billed 28 hours on the Reply and 14 hours opposing the JMOL Motion. *Id.* He is thus entitled to an additional $14,700. Mr. Wood has spent an additional 4.2 hours on the Reply. *Id.* He is thus entitled to an additional $504. Attorneys' fees for this work totals $18,142.

### F. Costs Sought in Connection with the Litigation and the Fee Motion

In addition to the attorneys' fees discussed above, Plaintiff seeks to recover the costs included in his previously-filed Bill of Costs[9] as well as litigation expenses and witness fee costs, which total $20,727.75. Docket No. 178; Wykowski Decl., Ex. C. Defendant contests the following specific costs Plaintiff claims under FEHA: (1) $12,744.28 in witness fees paid to Richard Carlson; (2) $5,000 in witness fees paid to Geoffrey C. Hazard; and (3) $1,437.75 in photocopying fees.

An exception to the general rule that parties must pay the costs of their own litigation is provided by statute. The codification of allowable FEHA costs, Subdivision (a) of Cal. Civ. Proc. Code § 1033.5, provides that witness fees and the fees of expert witnesses ordered by the court, among other expenses, are allowable. *See Davis v. KGO-T.V., Inc*, 17 Cal.4th 436, 441(1998). Subdivision (b) proves a list of specifically disallowed expenses, which include some costs of photocopying.

Plaintiff contends that the FEHA statute unambiguously allows a court to discretionarily award "costs, including expert witness fees" to the prevailing party. Cal. Gov't Code § 12965(b). Plaintiff further asserts that court discretion is limited to determining whether the allowable costs were "reasonably necessary" and "reasonable in amount," as well as whether to award or deny

---

[9] The original amount of $11,685.96 was reduced to $10,284.20 after Plaintiff's attorneys negotiated a lower cost for photocopying services; this Bill of Costs is included in the total amount of costs requested in the Motion. Motion at App. A.

additional costs not specifically mentioned in Cal. Civ. Proc. Code § 1033.5. *See Davis*, 17 Cal.4th at 442. The Court finds that the costs for Richard Carlson's expert opinion shall be allowed. The Court decided after hearing arguments on July 18, 2011, that Mr. Carlson's economic opinion was admissible and finds that his fee for performing that service is reasonable in amount. The Court declines to exercise its discretion to reduce this cost based on the jury's disagreement with Mr. Carlson's opinion.

The Court also finds that the costs associated with procuring Professor Geoffrey Hazard's opinion shall be awarded in their entirety. The Court exercises its discretion to award this expert witness cost.

Plaintiff's counsel argue that their photocopying expenses were necessary for the prosecution of their case, and are therefore allowable under the FEHA statute provision that permits the court to discretionarily award "reasonable attorney's fees and costs." Cal. Gov. Code § 12965(b). Subdivision (b) of Cal. Civ. Proc. Code § 1033.5, however, provides a list of disallowed expenses, which includes costs for photocopies that were not used as exhibits at trial. Defendant asserts that photocopying expenses are not allowable costs under FEHA, citing *Ripley v. Pappadopoulos*, 23 Cal. App. 4th 1616 (1994), and *Ladas v. California State Automobile Ass'n*, 19 Cal. App. 4th 761 (1993). The court in *Ripley* specifically cited to Cal. Civ. Proc. Code § 1033.5(b), holding that copying expenses were "expressly disallowed as costs unless expressly permitted by law." *Ripley*, 23 Cal. App. 4th at 1627. The Court similarly decides to disallow costs for photocopies made "over the life of the case" in accordance with Cal. Civ. Proc. Code § 1033.5(b). Wykowski Decl., Ex. C. Since Plaintiff did not specify which part of the $1,437.75 sought for photocopies was spent on exhibits used during trial, the entire amount must be denied.

**G.   Costs Incurred After the Filing of the Fee Motion**

Plaintiff has not claimed additional costs for work performed after filing the fee motion.

//
//
//
//

## IV. CONCLUSION

For the reasons stated above, the Court awards Plaintiff the following amounts: $463,401.2 in attorneys' fees ($445,259.2 for the litigation and the fee Motion; $18,142.00 for work performed since the filing of the fee Motion), $29,574.40 in costs.

IT IS SO ORDERED.

Dated: October 31, 2011

JOSEPH C. SPERO
United States Magistrate Judge